Page number 25-5556, USA versus Jeremy Harrell. Oral argument, 15 minutes per side. Ms. Vice for the appellate. Thank you. Take your time. Don't worry. We got we got to look at our stuff ourselves. All right. Well, I'll get warmed up then. Good morning. Good morning. Thank you, Your Honor. May it please the court. Abby Vice for defendant appellant Jeremy Harrell. I'd like to reserve three minutes for rebuttal, please. Ms. Vice, can you move the mic maybe a little closer to your mouth? Thank you, Judge. Your Honors, the judgment in this case cannot stand for two reasons. The first is that it was an amendment that was not authorized by statute. The second is that it imposed forfeiture outside of Mr. Harrell's physical presence. As to the first defect, the finality of criminal sentences is a fundamental value in the American justice system. As this court observed in Curry, once a final sentence is imposed, a court lacks authority to change it or modify it unless it is expressly authorized by statute. That isn't the case here under Rule 32.2, which authorizes the imposition of forfeiture no later than during the sentencing hearing. It is not authorized by Rule 35 because it occurred greater than 14 days after the sentencing hearing, and it is not authorized under Rule 36 because that authorizes correction of only clerical errors, which are non-substantive. And as this court has observed, that does not include judicial mistakes or omissions. As to the second defect, the right to be sentenced in the physical presence of the judge is also a fundamental value in the criminal justice system. So much so that the oral punishment announced in the courtroom is the sentence, and the written judgment is merely evidence of that sentence. When they conflict, therefore, as this court has explained, the oral sentence controls. Can I just get your reaction to this take on the case? I mean, it's quite unusual. I would say the district court made a few mistakes. End of sentencing, God only knows the number of cases he'd had before this one. But I would also say, you know, the lawyers, it wasn't always perfect from the lawyer's perspective in terms of reminding him now's the time or saying, you know, preserving these objections. And so it did have kind of a rough justice sense because ultimately he does get around to doing it the right way, which is not okay if Rule 32 is a mandatory claim processing rule and you're just stuck. But I guess, so that's what strikes me as the key issue in the case. And I'm just not sure if it's mandatory after McIntosh. So that, what's your take on that? Because I think you're right if it's mandatory. It just doesn't matter who made all the mistakes. The rule's mandatory and, you know, your client wins. But McIntosh, you know, says this is a time directive and so forth. And that seems to undercut your position. Your Honor, there's no good reason to revisit Maddox on the basis of McIntosh. The Supreme Court went out of its way in footnote five of the McIntosh decision to say we're discussing only Rule B2B with respect to preliminary orders of forfeiture. They said Rule B4B is not implicated by the decision. And there's good reason. Different parts of the same rule. That's correct. One's going to be mandatory claim processing. One's going to be a mere directive. That seems, I don't know, there's a lot of cognitive dissonance for me on that. Your Honor, I submit that's the best reading of the statute for a couple of reasons. First, the language does not contemplate flexibility in the same way that B2B does. B2B, the rule that the Supreme Court addressed in McIntosh, includes, with respect to timing, language like unless it is impractical and sufficiently ahead of sentencing or adequately ahead of sentencing, something like that. I'm sorry. No. This is a great point to make. But here we have the language or must otherwise advise, you know, make sure the defendant knows that the forfeiture. There's a little bit of wiggle room there. That's right. And this court in Maddox actually addressed that corner exactly. It said because the district court in that case had left not only the amount of forfeiture up in the air, but whether it would be imposed at all, forfeiture had not been imposed in that case. I want to ask you a question about the flexibility. So the flexibility that the Supreme Court was talking about in McIntosh, is it your take that that flexibility has to be related to some aspect of the timing, or is it any flexibility whatsoever? I suppose the most relevant is with respect to timing, because you're sussing out whether the rule is a time-related directive, kind of a suggestion for speed, as opposed to a mandatory claims processing rule. So does B-4's language saying that or, you either have to say what the forfeiture is, or you have to at least let them know, let the defendant know in no uncertain terms that forfeiture is going to occur. And I'm doing some serious paraphrasing here. But is that the type of flexibility that you think is contemplated by the Supreme Court in McIntosh? I do not, Your Honor, because the upshot of B-4B is to wrap up the process of sentencing, or excuse me, to wrap up the criminal sentence at the sentencing hearing. There is finality and concreteness in B-4B in a way that just does not exist in B-2B. And I would submit the Supreme Court found, at least on the basis of Judge Wood's decision, the Seventh Circuit decision in Lee, you can reasonably come out on either side for B-2B and B-4B, one being a time-related directive and one being a mandatory claims processing rule. The Supreme Court said we are staying away from this, and it's for a good reason. The best reading I would— I'm sorry to interrupt, but have any courts since McIntosh agreed with your position? There has not been a lot of circuit decision-making in this particular realm. Camerata is a Third Circuit case addressing B-5B, if I'm remembering correctly, with respect to kind of jury proceedings and forfeiture. But to my knowledge, there's not a court that's revisited on the basis of McIntosh. I'm sure you understand these nuances better than I do, and it's always a bad sign when we're looking at footnotes in an argument. But you referred to footnote five as helpful to your position.  But footnote three, when they're describing the circuit split that they're addressing, they just—they ultimately say Second Circuit's right, and they characterize the Sixth Circuit because of Maddox's claim processing rule. So shouldn't we pay attention to the fact that they pushed—pitched us on the wrong side of this? Went all in on the Second Circuit, and now—it doesn't look like Maddox is long for this world, is what I'm saying. And I, for one, am a little nervous about clinging to it. So everyone agrees, certainly, that the holding with respect to B-2B in Maddox is abrogated. Yeah, but they don't—that's not how they—that's not how footnote three characterizes this. I mean—I mean, well, maybe—they just call Maddox— So Maddox— Does Maddox deal with both? Maddox—yes, so Maddox took— Do you think they're affirming part of Maddox in this, or—? I think because the court went out of its way to say, we are not going to look at these two provisions of the rule in a batch. And what the Second Circuit had done, and what this court had done in Maddox, was analyze B-2B and B-4B together and run them through the test. Does it distinguish them? Does the Second Circuit make the distinction you're relying on? Between B-2B and B-4B? I don't recall off the top of my head. I know the Seventh Circuit had in Lee, and I think that's probably the best reason to explain why the Supreme Court would have included that decision in its footnote five. I think maybe, you know, one way to put it would be, McIntosh failed to explicitly disturb Maddox. That's right, and the court's standard—there's, I mean, various ways to say it, but one of the ones we quoted in our brief, it's mandates modification of a binding panel precedent. There are, you know, certainly various articulations, but there is no good reason to disturb Maddox today. So let me pick at that, right? I mean, what do you do with the concern in McIntosh? It's not a concern, it's a reason for the holding that the rule there, that subsection, was dealing with the court's conduct. Not the conduct of the parties, but the court's conduct. Isn't that what we have here? So that is one of the guiding factors, certainly, but it isn't the case that you have a really rigid, you know, McIntosh walked through three. It's a holistic consideration of the provisions in the statute, and we have, I think, strong arguments on the language not contemplating flexibility on B4B in the same way that it does for B2B, and additionally, the consequences of missing the rule are indicated here in a way that it is not in B2B. So it says in B4B, the time for the defendant or the government to file an appeal from the forfeiture order or from the court's failure to enter an order that could only be talking about the government begins to run when the judgment is entered. And, you know, certainly there are other examples of consequences that are maybe clearer, but the quintessential example of a statute that does not provide consequences is when the statute says, you know, this, it's the Supreme Court's decision in Rigsby, this must happen, the complaint shall be sealed, and then the statute ends. And that isn't the case that we have here. So just to make sure I'm getting your position, McIntosh says there's three types of these rules. We're debating mandatory claim processing, time directive. That's right. You don't think your case is going to fit into a fourth category? A new category? Well, that's what I'm trying to figure out. Is the dichotomy for us, Maddox is good law because it's still a claim processing rule? I see, yes. Time directive, or is it possible that there's going to be a fourth category? I would- Even before McIntosh, I wasn't aware there were three categories, to be honest with you. You're working with seven. I think they invented a third that can do that. So I'm just curious, is your take that your case really fits well into claim, mandatory claim processing, or that it's going to be still another category? I would submit that Maddox addresses the dichotomy between mandatory claims processing and a time-related directive, and this case fits neatly within Maddox, and therefore does not present a good reason to revisit Maddox from the ground up on the basis of McIntosh. Everybody agrees that it isn't a jurisdictional rule, of course, but in terms of a mandatory claims processing rule, you have an analogous decision from this court explaining that the amendment of forfeiture was not authorized in that case. If we disagree with you on this threshold issue, and it's a harmless error inquiry, how is this harmful to Mr. Harreld? Looking at the transcript of the hearing, it is just not plausible for the government to be able to show with certainty that this same exact sentence would have been imposed if the district judge had understood that he was imposing not only this $200,000 restitution award, which they talked about at length in the sentencing hearing, but an additional $100,000 in forfeiture. The transcript is 120 pages long. About two pages of it talk about forfeiture, and it's only because the government raised it at the end. Additionally, there is a lot of consideration. The district judge was very experienced, 20 years on the bench. He knew this was an unusual case. Excuse me, my time has elapsed. Thank you. Get your rebuttal. Thank you. Here from the government. Good morning. Good morning. May it please the court, Haley McCauley on behalf of the United States. First of all, this court should affirm the amended judgment imposing a forfeiture money judgment against Mr. Harrell as an initial matter because Mr. Harrell invited the errors that he now complains of. He asked the district court to defer issuing a decision on forfeiture at sentencing. Didn't the district court indicate really before he even said anything that because of the late hour, the court wasn't sure if they were going to get to the issue of forfeiture? I think the important point there, Your Honor, is that the court wasn't sure there was going to be time. The court never signaled that he would not make time if it was necessary, and that, of course, issue was raised because the United States— Let me interrupt you for a second. Sorry. My point is that the defense seemed to be, at least in reading the cold transcript in my mind, responding to the court's statement that the court wasn't sure if he was going to get to forfeiture. Right. I think that's correct. The defense was responding to that, but also the entire issue was raised because we were at the end of the sentencing hearing, and the court said, have I missed anything? The United States said, yes, you have not announced the forfeiture, essentially. So the United States was indicating to the court this issue needs to be addressed. Because a preliminary order of forfeiture was never entered in this case. Right. Even following this sentencing where forfeiture was put off, there was no preliminary order of forfeiture entered. That's correct. There was one order of forfeiture that incorporated. Pretty out of the ordinary. For there not to be a preliminary order entered, correct. Invited error, just the word invitation, it looks like the district court was doing the inviting by saying, I'm not sure we're going to have time for this. Well, I think the invited error standard is... Not to ask of defense counsel at the end of a long hearing when you get the sense the judge would rather do it later. I don't know. It doesn't seem like invited error to me. Right. But when invited error is basically interpreted as something more than forfeiture, right? Exactly. It seems like forfeiture is what it seems like. It doesn't seem like invited error. Well, when the judge simply said, and I think we could look at the transcript. The judge never said, I don't have time to consider this. It had been a three-hour sentencing. I think we were at about 530 in the evening when this occurred. The judge said, I'm not sure I'm going to have time. And also, very importantly, the government objected and said, this issue is ripe. The defendant has not objected. We need to decide it now. There's no reason to defer it, essentially. Because there's no... He hasn't contested this. He's forfeited any arguments because we've made a motion, and he didn't respond to it within the necessary period of time. At that point, the court was never considering deferring it. And I think then he turned to the defendant and said, something along the lines of, do you understand I'm talking about forfeiture here, not restitution? And he said, can I supplement? And I don't think there was ever any indication that the court was going to defer or to allow the defendant to supplement. The defendant's counsel was the one that raised that option. And when you look at it, it's something more than forfeiture that provoked the court to take that action. The defendant didn't just let the court say, I'm going to defer this issue. He said, can I supplement? And I do think there's reason to believe the court would not have deferred the issue, given the United States objection to doing that. If the court had just not mentioned the word forfeiture at all, would that be error under any standard? If the court had simply not addressed forfeiture at sentencing, correct. Yes. It would be plain error, whatever it would be. Right. Whatever, well, and that gets to the question from how we interpret McIntosh and how it applies to be for. Not harmless. Right. Do you agree on the second issue that 43A was violated? The defendant's right to presence? No, Your Honor. We do not believe that the defendant's right was violated. He was present at his sentencing, obviously. Well, as an initial matter, there was no objection to this issue. That's a different question. Right, right, right. So plain error review applies, correct. But no, we do not believe there was an error. The defendant had an opportunity to address these issues. Again, the government raised the question of forfeiture at the conclusion of the sentencing hearing. I thought 43A, pretty clear, it's a really short rule. Court, a defendant has to be present at sentencing. This is part of the sentence. It was imposed outside of his presence. Correct, and then the court says we're going to defer determination on forfeiture, which implied, because forfeiture is mandatory, that there's going to be forfeiture ordered. It's an issue of how much is the forfeiture going to be. But there's no right under Rule 43 to presence at modification of, so Rule 43 is. Aren't you getting into Rule 35 and 36? I'm not so sure this is really a modification. Well, also under 32.2, because 32.2 contemplates this later amendment of the judgment. Well, does it contemplate it when forfeiture hasn't been announced at all? Well, forfeiture has been announced in the sense that it's determined we're going to decide the amount of forfeiture at a later date. Is that what the court said? That we're going to decide the amount of forfeiture? Unfortunately, I don't think his terminology was that clear. That was the only issue presented. And really, I think some of the confusion here is in the overlapping factual arguments that related to forfeiture, restitution, and loss amount. The three-hour sentencing hearing was primarily focused on those arguments about, essentially, what would the extent of the fraud was here? What are the amounts an issue? All those factual arguments, whilst they are interpreted somewhat differently in the forfeiture context, because we're looking at profit instead of loss, the same facts applied, and the same questions were at issue. And so there was going to be forfeiture. The question was, how are we applying those to the profit? Well, you say there was going to be forfeiture. And I'll just confess to you, I started out my career as a forfeiture attorney. This is really, really interesting. You don't see this a lot, yeah. Good luck, bad luck. Not clear. District judge, forfeiture attorney? The rules have changed. I'll grant you that. But you don't think that there's a problem with the court not specifically saying, OK, there's going to be a forfeiture. But we're not going to get into the nuts and bolts of what the actual calculation is going to be here. I'm going to set that for later. Since this is the sentencing, this is where the court is letting the defendant know, these are all the penalties associated with the crime that you've been convicted of. Isn't there a problem if the court does not, under B4B, isn't there a problem if the court doesn't say, yes, there's going to be forfeiture? I would argue that there's not, given the mandatory nature of forfeiture and the fact that the entire sentencing proceeding, there was never any indication from the defendant that he was contesting that forfeiture was mandatory under the statute. In a perfect world, wherever forfeiture applies, wherever restitution applies, the court will, of course, set what restitution is going to be or set what forfeiture is going to be. But our world isn't perfect. And so there are instances where maybe restitution should have been ordered, and it doesn't get ordered. So I don't think that you can say that just because the statute requires forfeiture or the statute requires restitution, then that's enough. The defendant knew that the statute required it, and therefore, that was it. Particularly when the judge keeps forgetting it. And that seems like quite the burden to put on. It's asymmetric. Well, and I don't think I'm relying solely on the fact that it was required. We're relying on the fact the defendant had never raised any arguments contesting that it was required, even when the defendant. At sentencing, he raised in. He said that he objected. But he never said he was objecting to forfeiture altogether. Even when he filed the supplement that ultimately was filed, counsel just said the amount should be zero because it's duplicative of restitution. He never said forfeiture is not mandatory, I'm not obligated, or forfeiture can't be imposed according to the offenses that I've been convicted of. There were never any arguments that forfeiture wasn't mandatory or wasn't going to be ordered in this case. It was a skill. And the skill, I mean, the amount could be zero. And that's where we're kind of talking about, if we're talking about amounts or we're talking about is it going to be imposed, it's a very thin line there. Because really, what he argued for was make the amount zero because you've already ordered restitution against me. Or you're going to impose a restitution and it's going to be duplicative. It was never an argument of this statute doesn't authorize or doesn't mandate forfeiture. I know the amount of restitution. It was in the $200,000, right over $200,000. And that's because there were additional losses that were not recognized of the defendant's profit and also because the forfeiture statutes are a little more circumscribed in terms of what can be sought as proceeds. So the amount of forfeiture was less. It was around $100,000. I'm happy also to address any questions the court might have regarding McIntosh. I know Mr. Harrell's counsel has indicated that the court should not be allowed to consider McIntosh. Maddox should still apply here. But this court has repeatedly recognized that when a Supreme Court ruling abrogates the reasoning of a Sixth Circuit decision, then that decision can be reconsidered by this court. If we agree with your opposing counsel that Maddox is still binding and applies to this subsection, do you lose on that issue? Prejudice is presumed? No. We would also argue that he, well, first of all, we would go back to the invited error argument. Even if it's a mandatory claims processing rule, he could forfeit or waive it. And because there was an invited error here and he asked that it be deferred, then you can just easily decide the case on that point. I disagree with you on invited error. What do you make of the Supreme Court's note that it wasn't making any ruling as to B4B? Correct. Correct. And it was not making any ruling about B4B. And we are not arguing that McIntosh controls directly because it did very clearly say it was not making any ruling as to B4B. However, the reasoning in McIntosh very clearly conflicts in some ways with this court's reasoning in Maddox. And because of that, it requires this court to reconsider its holding in Maddox. So let's talk a little bit about the flexibility prong. I asked Sister Counsel about whether or not the flexibility that is contemplated has to do with flexibility on timing, or is it just flexibility generally? What's your answer to that, and where do you draw that from? I would argue that it's flexibility generally. I don't believe it's flexibility in timing. But I would also argue that there is flexibility in timing in this rule, given that B2C allows for entry of a general order and then deferral of amount. Well, a general order, though, is going to tell you that there's forfeiture, right? Correct. But I'm just speaking solely to flexibility of timing. There is flexibility of timing in that sense. But I do think we aren't looking. And you should look at 32.2 as a whole, right? There's flexibility throughout the entire rule, as McIntosh recognized. And as the Chief Judge, I think, noted earlier, it would be very strange to look at a rule and find two subsections and say, this one is a mandatory claims processing rule, but this other subsection should be treated as a time-related directive. I think that's a decent point. But do you think it makes a difference that B2B is specifically about timing? Like, it's only about timing. That's the only thing that it cares about. Whereas B4B is timing is a component of it, but really the thrust of it is the information that you're giving to the defendant about forfeiture. I understand the point. I will say, post-McIntosh, there has not been a lot of consideration of its effect on other provisions in 32.2. There has been some consideration of its effect on 32.2B5. That was the Camerata decision. And it deals with whether the jury needs to determine the court's obligation to ask the jury to decide the forfeiture question. And so again, that's not really a timing issue, right? It's whether it's submitted it to the jury. And the court in that case did find that McIntosh would dictate that provision being a time-related directive. I think we understand your argument. Thank you very much. Appreciate it. Vice, get your rebuttal. Thank you, Your Honor. Just three quick points. As regards McIntosh footnote three, the court did reference rule 32.2B as a collective rule, but I think the court would be quite surprised to see circuits revisiting their precedents on all parts of 32.2B, particularly when it went to the pains of carving out in footnote five to say this is not implicating B4B. What about the point that, OK, technically it didn't overrule it, but we do this when the reasoning of our decisions is incompatible with subsequent US Supreme Court decisions. And that doesn't seem like a crazy point here. The reasoning, I would certainly agree, is incompatible with respect to B2B. But for all the reasons that Judge Wood laid out in the Lee decision, and that I have discussed today, the lack of contemplated flexibility in the language, certainly the consequences that are prescribed by the rule, the reasoning is. But Judge Wood's decision is pre-McIntosh, right? Yes. But I would, again, I think the Supreme Court would be pretty surprised to see circuits revisiting all of that, having cited the decision in Lee as a flag, like maybe there are reasonable. That's just a surprise. I'm just not sure I have the same answer you have. My mistake, Your Honor. I do agree that's the question. What would surprise them? And then I also wanted to note, to the extent the government is suggesting that forfeiture was imposed during the sentencing hearing, you have an example in this hearing of when the district judge wanted to impose a provision of a criminal sentence but defer just the amount. At Dock 88, the hearing, on page 2399, you have the judge saying, I hereby impose restitution or I intend to impose restitution. You will have to pay that debt. We're going to defer the amount, though, and settle that up later. Additionally, as to the government's point about the forfeiture being mandatory under the statute, the Supreme Court addressed this in green law. In that case, the district judge had inadvertently failed to sentence the defendant to the minimum requirement for the statute. And everyone would agree that you can't subsequently add more prison time years later after the sentencing hearing. And the same is true here. That's all. Thank you, Your Honor. All right. Thanks to both of you. And Ms. Weiss, I see you're court-appointing counsel, and I don't think you were counsel below. Am I right about that? I was not, no, Your Honor. All right. Well, I would suggest that based on your briefs and oral argument today, these problems would not have occurred. Your client had the good fortune of having you there. So thank you so much for doing this case. As a pro bono matter, it's a huge service to Mr. Harrell and to us, so we're very grateful. Thank you. And thanks to both of you for answering our questions and for your helpful briefs. All right. The case will be submitted.